IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| GLENN BENTON FINCK, ) | |
| a.k.a. Beau Lee DuBois, ID # 02287-081, ) | |
| Petitioner, ) | |
| vs. ) | No. 3:05-CV-0718-D |
| ) | |
| DAN JOSLIN, ) | |
| Respondent ) | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

I. BACKGROUND

A. Nature of the Case

Petitioner, a federal prisoner currently incarcerated in Seagoville, Texas,[1] filed the instant action pursuant to 28 U.S.C. § 2241 to challenge the manner in which the Bureau of Prisons (BOP), through respondent, administers the Inmate Financial Responsibility Program (IFRP) and collects court-ordered restitution. The respondent is Dan Joslin, Warden of the Seagoville facility.[2]

---

[1] Seagoville is located in Dallas County, Texas, which is within the territorial confines of this judicial district, *see* 28 U.S.C. § 124(a)(1).

[2] Although Dan Joslin, as Warden of the Seagoville facility, is the proper respondent for this action, petitioner often focuses on actions of the BOP and prison personnel. Consistent with such focus, the Court at times refers to the BOP rather than specifically to respondent.

B. <u>Procedural History</u>[3]

On September 19, 2003, petitioner was convicted in the United States District Court for the Western District of Missouri for violations of 18 U.S.C. §§ 1341, 1343, 2312, and 2314. The court sentenced him to sixty-three months imprisonment and ordered a three-year term of supervised release to follow such imprisonment. It also ordered immediate payment of a $700.00 special assessment and restitution in the amount of $148,572.40. In a section titled "Criminal Monetary Penalties", the court specifically ordered:

> You are hereby ordered to begin payment immediately and continue to make payments to the best of your ability until this obligation is satisfied. While in custody you are directed to participate in the Bureau of Prisons Financial Responsibility Program, if eligible, and upon your release from custody you shall adhere to a payment schedule as determined by the Probation Office.

In a section titled, "Schedule of Payments", it ordered:

> A lump sum payment of the full amount of restitution is ordered due immediately. If unable to pay the full amount immediately, the defendant shall make payments of at least 10 percent of earnings while incarcerated and monthly payments of $300 or 10 percent of gross income, whichever is greater, while on supervision.

On September 26, 2003, petitioner appealed his convictions.

In April 2005, petitioner filed the instant § 2241 petition while his appeal remained pending. He claims that the BOP, through respondent, forces him to pay restitution beyond the scope of the order of restitution. More specifically, he claims that the BOP collects $25.00 per quarter for restitution although he earns only $5.25 per month from his prison employment, and that it takes some of his restitution payments from funds mailed to him by a friend from outside the prison. He further claims that the BOP "use[s] extortion like tactics to force [him] to pay or to be punished for non-

---

[3] The procedural background is taken from the various filings in this action.

2

payment" and that it forces him to pay restitution although his pending appeal precludes disbursement of collected restitution until his appeal ends. Petitioner seeks to permanently enjoin the collection of restitution beyond that ordered by the sentencing court. He asserts: "I am not refusing to pay what my sentencing Court has ordered, but until I am given credit towards what I have already given the Court . . . at this time I feel it is wrong that I be subjected to any further punishment by the BOP."[4]

On May 2, 2005, the Court received an "Addendum" in which petitioner indicates that the BOP would collect $35.00 monthly for restitution commencing June 1, 2005. The "Addendum" also indicates that Sol Ruder, Unit Manager of the Seagoville facility, refused to exempt petitioner from the IFRP despite a recommendation from a correctional counselor that he be placed on exempt status due to a lack of funds.

On May 12, 2005, the Court received a "Motion for a [sic] Expedited Court Ordered Temporary Injunction"[5] in which petitioner seeks to enjoin respondent from transferring him and from collecting further restitution through the IFRP except the restitution provided for by the sentencing court. The motion also indicates that the BOP has commenced collecting $40.00 monthly for restitution.

On August 5, 2005, respondent filed a motion to dismiss in which it urges the Court to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6) for petitioner's failure to state a claim upon

---

[4] Petitioner has paid part of his restitution and has been informed that the restitution cannot be disbursed until his appeal becomes complete. The Court notes that, on June 13, 2005, the court of appeals affirmed petitioner's conviction, and on October 17, 2005, the United States Supreme Court denied his writ of certiorari. Petitioner's appeal is now complete.

[5] On May 24, 2005, the Court received and docketed an identical copy of this motion. Although petitioner has filed two motions, the Court need not differentiate between them due to their identical nature.

which relief can be granted. On August 23, 2005, the Court received petitioner's response to the motion to dismiss in which petitioner urges denial of the motion to dismiss because (1) respondent has violated an order of the court by filing a motion rather than an answer to his petition and (2) respondent has failed to fully address his allegations as required by Rule 5(b) of the Rules Governing Section 2254 Cases in the United States District Courts, including an allegation that the sentencing court may not delegate responsibility to the BOP for scheduling restitution payments. On January 3, 2006, the Court received a "Motion to Expedite" wherein petitioner urges the Court to expedite consideration of this action.

**C. Substantive Issues**

The various filings in this action invite consideration of whether (1) the IFRP and its implementing regulations are unconstitutional; (2) the sentencing court unconstitutionally delegated the scheduling of restitution payments to the BOP; (3) the BOP is collecting restitution payments in excess of that ordered by the sentencing court; (4) the BOP is improperly taking restitution from non-institutional sources; (5) the IFRP acts to extort money from petitioner; (6) respondent wrongfully denied him an exemption from the IFRP; and (7) the collection of restitution is unwarranted during the pendency of his appeal. The Court must also consider whether petitioner is entitled to any temporary or preliminary injunction.

## II. INMATE FINANCIAL RESPONSIBILITY PROGRAM

This action stems from respondent's attempt to comply with the IFRP, 28 C.F.R. §§ 545.10, 545.11.[6] This Court has previously discussed the IFRP in non-habeas contexts. *See Eidson v. Harper*,

---

[6] These regulations have resulted in BOP Program Statement 5380.07, *Financial Responsibility Program, Inmate*, effective January 27, 2000. (*See* Ex. C attached to Mot. Dismiss.)

4

No. 3:04-CV-1179-P, 2004 WL 2976675, at *2-4 (N.D. Tex. Dec. 14, 2004) (findings, conclusions, and recommendation), *adopted by* 2005 WL 106570 (N.D. Tex. Jan. 18, 2005); *Silva v. Bureau of Prisons*, No. 3:04-CV-0452-N, 2004 WL 1553471, at *1-2, 5-6 (N.D. Tex. July 12, 2004) (findings, conclusions, and recommendation), *accepted by* 2004 WL 1732354 (N.D. Tex. Aug. 2, 2004); *Bloch v. Lake*, No. 3:03-CV-2965-G, 2004 WL 1084720, at *1-6 (N.D. Tex. May 10, 2004) (findings, conclusions, and recommendation), *accepted by* 2004 WL 1208904 (N.D. Tex. June 1, 2004). In *Bloch*, the Court noted:

> The BOP enacted the Inmate Financial Responsibility Program (IFRP) to assist inmates in "meet[ing] his or her legitimate financial obligations." 28 C.F.R. § 545.10. The IFRP applies to all inmates in federal facilities except for study and observation cases, pretrial detainees, and inmates in holdover status pending designation. *Id.* IFRP procedures require staff members to review an inmate's financial obligations, which include special assessments and court ordered restitution, and create a financial plan after reviewing the Presentence Report, Judgement and Commitment Orders, and any other available documents. 28 C.F.R. § 545.11(a). Payments under IFRP "may be made from institution resources or non-institution (community) resources." 28 C.F.R. § 545.11(b).

2004 WL 1084720, at *2. The Court further noted:

> The decision as to whether an inmate participates in the IFRP is made by the BOP. 28 C.F.R. § 545.11(c). In addition, failure to comply with the IFRP often results in the loss of prison privileges and incentives including parole, furloughs, performance or vacation pay, outside work details, UNICOR work privileges, special purchase entitlement, community-based programs, and loss of housing status whereby the inmate will be quartered in the lowest status prison housing. 28 C.F.R. § 545.11(d).

*Id.* at *2 n.3. "In addition, § 545.11(b) permits BOP staff to unilaterally accelerate or increase an inmate's payments, and to consider funds obtained from outside sources as available resources in determining the appropriate payment." *See Silva*, 2004 WL 1553471, at *2 (citing *McGhee v. Clark*, 166 F.3d 884, 887 (7th Cir. 1999); *Mujahid v. Crabtree,* 999 F. Supp. 1398, 1400 (D. Or. 1998)).

5

In this case, a unit team from FCI Seagoville developed a payment plan pursuant to the IFRP that initially required petitioner to pay $25 in restitution per quarter. Petitioner agreed to this payment plan. The unit team later determined that the payments should be increased. Although petitioner objected to the increase, he allegedly agreed to the increase under duress and threats that he would be placed in refusal status if he refused.

### III. JURISDICTION

Plaintiff seeks habeas relief under 28 U.S.C. § 2241. That statute provides district courts the power to grant a writ of habeas corpus. A petitioner is entitled to a writ of habeas corpus under § 2241 only to remedy his or her restraint of liberty in violation of the constitution, treaties, or laws of the United States. *United States v. Hayman*, 342 U.S. 205, 211-12 & n.11 (1952). "Habeas corpus relief is extraordinary and 'is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Kinder v. Purdy*, 222 F.3d 209, 213 (5th Cir. 2000) (quoting *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)).

When a prisoner "challenge[s] the manner in which the BOP [administers] the Inmate Financial Responsibility Program" in a post-conviction motion or habeas petition that does "not explicitly attack any action by the sentencing court", the action is "in the nature of a 28 U.S.C. § 2241 petition, and it should [be] filed in the district of his incarceration." *United States v. Wilbert*, 54 Fed. App'x 404, 404 (5th Cir. 2002) (per curiam); *accord*, *Matheny v. Morrison*, 307 F.3d 709, 711-12 (8th Cir. 2002); *Mujahid v. Crabtree*, 999 F. Supp. 1398, 1401 (D. Or. 1998). Because petitioner is incarcerated in this district, this action properly proceeds under § 2241 in this Court.

## IV.  RELIEF UNDER 28 U.S.C. § 2241

To obtain habeas relief on a challenge to the manner in which the BOP administers the IFRP and collects restitution payments, petitioner must establish "the deprivation of some right secured to the petitioner by the United States Constitution or the laws of the United States." *Schmidt v. United States Dep't of Justice*, 34 Fed. App'x 151, 151 (5th Cir. 2002) (per curiam) (citing *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995)).  As previously mentioned, the filings in this action invite consideration of whether (A) the IFRP and its implementing regulations are unconstitutional; (B) the sentencing court unconstitutionally delegated the scheduling of restitution payments to the BOP; (C) the BOP is collecting restitution payments in excess of that ordered by the sentencing court; (D) the BOP is improperly taking restitution from non-institutional sources; (E) the IFRP acts to extort money from petitioner; (F) respondent wrongfully denied him an exemption from the IFRP; and (G) the collection of restitution is unwarranted during the pendency of his appeal.  The Court will address these issues in the order listed.

**A.  <u>Constitutionality of the IFRP</u>**

Petitioner first challenges the constitutionality of the IFRP.  Courts have "uniformly upheld" the IFRP regulations "against constitutional attack."  *See Bloch v. Lake*, No. 3:03-CV-2965-G, 2004 WL 1084720, at *4 n.5 (N.D. Tex. May 10, 2004) (findings, conclusions, and recommendation), *accepted by* 2004 WL 1208904 (N.D. Tex. June 1, 2004).  "Collecting restitution payments through the IFRP does not violate the constitutional rights of [petitioner]."  *See Silva v. Bureau of Prisons*, No. 3:04-CV-0452-N, 2004 WL 1553471, at *6 (N.D. Tex. July 12, 2004) (findings, conclusions, and recommendation), *accepted by* 2004 WL 1732354 (N.D. Tex. Aug. 2, 2004).  Accordingly, this claim fails.

**B.  Unconstitutional Delegation**

Petitioner next alleges that the sentencing court unconstitutionally delegated authority to the BOP to schedule restitution payments. In this case, the sentencing court ordered petitioner to immediately pay the full amount of restitution. In such circumstances, the sentencing court does not delegate the task of scheduling post-conviction restitution payments to the BOP. *See id.* at *5; *Bloch*, 2004 WL 1084720, at *3-4. Once the sentencing court set the amount and ordered immediate payment of restitution, the BOP "merely attempted to collect it" through the IFRP. *Bloch*, 2004 WL 1084720, at *3. Such attempt does not violate the Constitution or laws of the United States. Because the sentencing court did not delegate authority to the BOP to schedule restitution payments, and because the BOP simply took steps to collect restitution through the IFRP, this claim entitles petitioner to no habeas relief.

**C.  Restitution in Excess of Court Order**

Petitioner claims that the BOP collects restitution payments from him in excess of the sentencing court's order of restitution. He contends that the BOP has violated the restitution order because the BOP forces him to pay more than ten percent of his prison earnings.

The sentencing court in this case ordered petitioner to immediately pay the full amount of restitution and, in the event he was unable to do so, it required him to "make payments of at least 10 percent of earnings while incarcerated." It also directed petitioner to participate in the IFRP, if eligible, while in custody. Petitioner seeks to ignore the "at least" language of the order of restitution. The terms of the court order clearly require participation in the IFRP and do not restrict the BOP to collecting only ten percent of earnings from petitioner. By setting a minimum restitution payment of ten percent of earnings, the sentencing court set no upper boundary on restitution

8

payments by petitioner – the upper boundary for any restitution payment is established by the amount of restitution owed, not the order that petitioner make a minimum payment of ten percent of earnings. Consequently, this claim fails to state a claim upon which relief may be granted. The claim presents no deprivation of any right secured to the petitioner by the United States Constitution or the laws of the United States.

### D. Restitution from Non-institutional Sources

Petitioner also claims that the BOP's restitution collections violate the order of restitution because the BOP takes the restitution payments after aggregating earnings from his prison job with funds received from a friend. He contends that the BOP is limited to collecting restitution only from his prison "earnings."

Petitioner again misconstrues the order of restitution. By setting a minimum restitution payment of ten percent of earnings, the sentencing court placed no restriction on the collection of restitution from non-institutional sources. Ten percent of "earnings", however defined, is the minimum payment. Consistent with the restitution order, actual payments may exceed ten percent of earnings and may include funds that do not constitute "earnings."[7] The BOP has not collected restitution in violation of the restitution order.

The sentencing court, furthermore, specifically directed petitioner to participate in the IFRP. The IFRP permits the BOP to collect restitution payments from non-institution sources. *See Silva v. Bureau of Prisons*, No. 3:04-CV-0452-N, 2004 WL 1553471, at *2, 5-6 (N.D. Tex. July 12, 2004) (findings, conclusions, and recommendation), *accepted by* 2004 WL 1732354 (N.D. Tex. Aug. 2,

---

[7] To resolve this claim, the Court need not determine whether the funds received from petitioner's friend constitute "earnings" as contemplated by the restitution order.

2004); *Bloch v. Lake*, No. 3:03-CV-2965-G, 2004 WL 1084720, at *2 (N.D. Tex. May 10, 2004) (findings, conclusions, and recommendation), *accepted by* 2004 WL 1208904 (N.D. Tex. June 1, 2004); *McGhee v. Clark*, 166 F.3d 884, 887 (7th Cir. 1999); *Mujahid v. Crabtree*, 999 F. Supp. 1398, 1400 (D. Or. 1998). Because the BOP has merely collected IFRP payments in accordance with IFRP regulations, such collections are entirely appropriate. *See, e.g., Matheny v. Morrison*, 307 F.3d 709, 712 (8th Cir. 2002) (holding that BOP may administer collection of payments through IFRP when sentencing court orders immediate payment); *McGhee*, 166 F.3d at 886 (same). Accordingly, this claim fails to state a claim upon which relief may be granted.

**E. Extortion**

Petitioner's filings also invite consideration of whether the IFRP acts to extort additional funds from him. However, because respondent was merely collecting IFRP payments in accordance with IFRP regulations, such claim necessarily fails. *See McGhee*, 166 F.3d at 887. Petitioner has identified no conduct that violates IFRP regulations. The decision to unilaterally accelerate his payments based upon resource funds obtained from outside sources is "expressly permitted by IFRP regulations." *Id.* (citing 28 C.F.R. § 545.11(b)). Any claim of extortion based upon collecting IFRP payments thus fails to state a claim upon which relief may be granted.

**F. Exemption**

Petitioner indicates that respondent wrongfully denied him an exemption from the IFRP. Petitioner, however, has failed to allege facts to show he is eligible for such an exemption. BOP Program Statement 5380.07(9)(e) provides for a temporary exemption for inmates who are "unable to participate adequately toward satisfaction of the obligation." Such exemption is generally entered when "medical or psychological restrictions . . . prevent the inmate from working", but may also be

10

entered when the inmate "is unable to secure employment in UNICOR or advance beyond maintenance pay due to conditions beyond the inmate's control (overcrowding, institution need, special circumstances, etc.)." In addition, "at initial classification, the unit team may place newly committed inmates who have limited financial resources in IFRP 'EXEMPT TMP' status until their first program review."

Not only has petitioner failed to allege facts that show he is eligible for a temporary exemption under Program Statement 5380.07(9)(e), he has failed to show that he has a constitutional or statutory right to a temporary exemption.[8] Inmates, furthermore, have no constitutional or statutory right to a permanent exemption from the IFRP. *See Bloch*, 2004 WL 1084720, at *4.

For all of these reasons, the denial of exempt status to petitioner entitles him to no habeas relief.

## G. Restitution During Pendency of Appeal

With respect to petitioner's claim that the collection of restitution is unwarranted during the pendency of his appeal, the Court finds that the passage of time has rendered such claim moot. A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). "If a dispute has been resolved or if it has evanesced because of changed circumstances, including the passage of time, it is considered moot." *American Med. Ass'n v. Bowen*, 857 F.2d 267, 270 (5th Cir. 1988). As previously

---

[8] The Court notes that policy statements of the BOP lack independent force of law and "are entitled to respect . . . only to the extent that they have the 'power to persuade'." *Henrikson v. Guzik*, 249 F.3d 395, 398 (5th Cir. 2001).

11

mentioned, the court of appeals affirmed petitioner's convictions in this case. The resolution of petitioner's appeal renders this claim moot.[9]

## H. Conclusion

Because petitioner has established no deprivation of any right secured to him by the Constitution or laws of the United States, he has failed to state a claim for relief under 28 U.S.C. § 2241. Consequently, the Court should grant respondent's motion to dismiss, and dismiss this habeas action.

## V. TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION

Petitioner also seeks various injunctions in this case. He seeks to enjoin the BOP from collecting restitution from him until the Court resolves the instant action and from collecting restitution above that ordered by the sentencing court. He also seeks to enjoin his transfer from the Seagoville facility.

Fed. R. Civ. P. 65 governs the granting of a preliminary injunction or temporary restraining order (TRO). To obtain a TRO, an applicant must satisfy the requisite elements for obtaining a preliminary injunction. To obtain a preliminary injunction, petitioner must show (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury outweighs any damage the order might cause to the

---

[9] To the extent such claim is not moot, the Court finds that the collection of restitution during the pendency of petitioner's appeal is consistent with the sentencing court's order of restitution. As previously mentioned, the sentencing court ordered immediate payment of restitution, but provided for periodic payments if petitioner was unable to immediately pay the full amount of restitution. The sentencing court did not defer payment of restitution during the pendency of appeal even though disbursement of collected funds may have been delayed until completion of the appellate process. Collecting restitution for later disbursement promotes the purpose of restitution to repay victims for losses incurred as a consequence of wrongful actions of the defendant. Had the appellate court overturned petitioner's convictions, the collected funds could easily be returned to him. If, as occurred here, the appellate court affirmed the convictions, the collected funds would be immediately available for disbursement to the victims. In either case, the collection of restitution during the pendency of appeal does not deprive petitioner of any right secured by the Constitution or laws of the United States.

respondent; and (4) that the injunction will not disserve the public interest. *Enrique Bernat F., S.A. v. Guadalajara, Inc.*, 210 F.3d 439, 442 (5th Cir. 2000). Because petitioner has failed to state a claim upon which relief can be granted, he has also failed to show that this action has a substantial likelihood of success on the merits. Inmates, furthermore, have no constitutional right to be housed in a particular prison facility. *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Yates v. Stalder*, 217 F.3d 332, 334 (5th Cir. 2000). Consequently, the Court should issue no TRO or preliminary injunction in this case.

## VI.  RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court **GRANT** respondent's motion to dismiss and **DISMISS** the instant petition filed pursuant to 28 U.S.C. § 2241 for the failure of petitioner to state a claim upon which relief can be granted. It is further recommended that the District Court **DENY** petitioner's requests for injunction.

**SIGNED this 10th day of February, 2006.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

  The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

                 _____
                 IRMA CARRILLO RAMIREZ
                 UNITED STATES MAGISTRATE JUDGE